UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| LARIME TAYLOR, | Case No. 2:19-CV-995 JCM (NJK) |
| Plaintiff(s), | TEMPORARY RESTRAINING ORDER |
| v. | |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al., | |
| Defendant(s). | |

     Presently before the court is defendant Clark County's ("the county") motion to dismiss plaintiff's amended complaint. (ECF No. 15). Plaintiff Larime Taylor ("plaintiff") filed a response (ECF No. 61), to which the county replied (ECF No. 74).

     Also before the court is defendants Las Vegas Metropolitan Police Department ("LVMPD"), Sheriff Joseph Lombardo, Officer Theron Young, Officer Matthew Kravetz, Officer Thomas Albright, Officer Janette Gutierrez, Officer Clint Owensby, Officer Robert Thorne, Officer Jacob Bittner, Officer Gerardo Reyes, Officer Morgan McClary, Office Jake Freeman, and Officer Christopher Longi's (collectively the "LVMPD defendants") motion to exceed the page limit on its motion to dismiss. (ECF No. 16). Plaintiff filed a response (ECF No. 35), to which the LVMPD defendants replied (ECF No. 39).

     Also before the court is the LVMPD defendants' motion to dismiss plaintiff's amended complaint. (ECF No. 21). Plaintiff filed a response (ECF No. 60), to which the LVMPD defendants did not reply.

     Also before the court is plaintiff's motion for temporary restraining order. (ECF No. 78).

     Also before the court is plaintiff's motion for preliminary injunction. (ECF No. 79).

## I.    Background

The instant action arises from the numerous interactions plaintiff has had with LVMPD officers while plaintiff was "live drawing" on the Las Vegas Strip.  (ECF No. 58).  Plaintiff has arthrogryposis multiplex cogenita ("AMC"), a congenital disease that affects the development and mobility of the joints in his arms and legs, requiring him to use a wheelchair.  *Id.* at 7.  For the past seven years, plaintiff has been live drawing on a large sidewalk in front of the Bellagio fountains on Las Vegas Boulevard.  *Id.*  In order to live draw, plaintiff backs his wheelchair against the guardrail that abuts Las Vegas Boulevard and uses his mouth to draw on a small portable table with a limited number of art supplies.  *Id.* Although he does not sell his drawings, plaintiff accepts tips from passersby.  *Id.*  Plaintiff live drew on the Las Vegas Strip without issue from 2012, until April 2017.  *Id.* at 11.  Beginning in April 2017, however, LVMPD officers allegedly "began harassing and citing street performers in the Las Vegas Resort District, including [plaintiff]."  *Id.* at 12.

Pursuant to Clark County Code ("CCC") § 16.11.090, pedestrians who violate the provisions of chapter 16 of the CCC are guilty of a misdemeanor.  Clark Cnty., Nev. Code of Ordinances § 16.11.090.  Section 16.11.035 provides as follows:

> It is the police of Clark County that no obstructive use, other than a permitted obstructive use, shall be permitted upon any public sidewalk of the resort district of the Las Vegas Valley if the obstructive use, if allowed to occur, would:
>
> (a) Cause the LOS for the sidewalk to decline below LOS C; or
>
> (b) Result in a significant threat to or degradation of the safety of pedestrians.

Clark Cnty., Nev. Code of Ordinances § 16.11.035.  Further, § 16.11.070 states, in pertinent part, that:

> No equipment, materials, parcels, containers, packages, bundles or other property may be stored, placed or abandoned in or on the public sidewalk. This provision shall not apply to materials or property held or stored in a carry bag or pack which is actually carried by a pedestrian or items such as a musical instrument case or a backpack which is temporarily placed next to a street performer for that street performer's use unless said musical instrument case or backpack actually obstructs the sidewalk in violation of this chapter[.]

James C. Mahan
U.S. District Judge

1    Clark Cnty., Nev. Code of Ordinances § 16.11.070.

2         Because of his small portable table, LVMPD officers have cited plaintiff for obstructive

3    use of the sidewalk ten times in the last two years. *Id.* at 12–18. LVMPD officers cited plaintiff

4    on June 11, June 29, July 26, and September 7, 2017; February 16, May 3, and July 28, 2018;

5    and July 12, 14, and 26, 2019. *Id.* In addition to citing plaintiff, LVMPD officers seized

6    plaintiff's table on June 11 and September 7, 2017.[1] *Id.* at 12, 15. Plaintiff further alleges that

7    LVMPD officers interrupted his performance on June 16 and 19 and October 21, 2019. *Id.* at

8    19–20[2]; (*see also* ECF No. 78 at 5).

9         With one exception, each of plaintiff's citations were dismissed. *Id.* at 12–18. The July

10   26, 2017, citation was the sole exception. *Id.* at 13–14. In that case, the Las Vegas Justice Court

11   found plaintiff guilty of obstructive use of a public sidewalk after a bench trial. *Id.* at 13. On

12   appeal to the district court, however, the district court judge vacated plaintiff's conviction and

13   remanded the case. *Id.* at 14. The district court issued an order on December 21, 2018, holding

14   that (1) there was insufficient evidence to prove that plaintiff was actually obstructing the

15   sidewalk, and (2) CCC § 16.11.070 was unconstitutional as applied to plaintiff because the

16   regulation, coupled with his AMC, did not provide ample alternative channels for him to engage

17   in his live drawing. *Id.*

18        Just prior to being issued a citation on July 12, 2019, plaintiff discussed his history of

19   citations and his successful appeal with Officer Bittner. *Id.* at 17. "Officer Bittner explained that

20   [LVMPD] was enforcing the [c]ode's obstruction provisions against artists and performers as a

21   department-wide policy, and that he was obligated to issue a citation until a court ordered his

22   superiors to change the policy." *Id.* On July 14, 2019, Officer Freeman told plaintiff that "until

23   an injunction was issued[,] he was obligated to follow [LVMPD]'s policy of ticketing street

24   performers." *Id.* at 18.

25

26   _____

27        [1] Notably, LVMPD officers seized a different table on each occasion because the table
     was never returned to plaintiff after the June 11, 2017, seizure. (ECF No. 58 at 37).

28        [2] The various LVMPD officers named as defendants are those who interrupted plaintiff's
     live drawing, whether or not plaintiff received a citation as a result.

After his storied history of chapter-16-related citations, plaintiff filed the instant action against LVMPD, its officers, Sherriff Lombardo, and the county for violating his First, Fourth, Fifth, and Fourteenth Amendment rights; violating the Americans with Disabilities Act ("ADA"); violating the Nevada Constitution; negligent training, supervision, and retention; and conversion.

**II.     Legal Standard**

*1.   Injunctive relief*

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. Fed. R. Civ. P. 65. "Injunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted." *Shelton v. Nat'l Collegiate Athletic Assoc.*, 539 F.2d 1197, 1199 (9th Cir. 1976). "The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed merely to prevent irreparable loss of rights prior to judgment." *Estes v. Gaston*, No. 2:12-cv-1853-JCM-VCF, 2012 WL 5839490, at *2 (D. Nev. Nov. 16, 2012); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

This court considers the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) a likelihood of success on the merits; (2) a likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994); Fed. R. Civ. P. 65 (governing both temporary restraining orders and preliminary injunctions).

The party seeking the injunction must satisfy each element; however, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Serious questions going to the merits and a balance of hardships that tips sharply

towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotations marks omitted).

Finally, to obtain injunctive relief, plaintiff must show it is "under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1171 (9th Cir. 2011) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009)).

### 2. *Motion to dismiss*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 2009) (citation omitted).

"Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *Id.* at 678-79. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.*

Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when plaintiff's complaint

alleges facts that allow the court to draw a reasonable inference that defendant is liable for the alleged misconduct. *Id.* at 678.

Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The *Starr* court held,

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

## III. Discussion

As an initial matter, the court dismisses the county as a defendant from claims 1, 2, 3, and 6 pursuant to plaintiff's stipulation. (ECF No. 61 at 1 n.2). Similarly, the court dismisses all claims against the LVMPD officers in their official capacities and dismisses Sheriff Lombardo as a defendant in claim 2, consistent with the plaintiff's stipulation. (ECF No. 60 at 2 n.4, 23 n.20).

Amended pleadings supersede the original pleading. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Consequently, filing an amended complaint will ordinarily moot a pending motion to dismiss the original complaint. *See, e.g.*, *MMG Ins. Co. v. Podiatry Ins. Co. of Am.*, 263 F. Supp. 3d 327, 331 (D. Me. 2017) ("Typically, this amendment would render the pending motion to dismiss moot."); *Oliver v. Alcoa, Inc.*, No. C16-0741JLR, 2016 WL 4734310, at *2 (W.D. Wash. Sept. 12, 2016); *Williamson v. Sacramento Mortgage, Inc.*, No. CIV. S-10-2600 KJM, 2011 WL 4591098, at *1 (E.D. Cal. Sept. 30, 2011), *as amended* (Oct. 11, 2011).

However, there is an exception to the general rule. When the amended complaint is substantially identical to the original complaint, the court can adjudicate the pending motion to

dismiss as it pertains to the amended complaint. *Mata-Cuellar v. Tennessee Dep't of Safety*, No. 3:10-0619, 2010 WL 3122635, at *2 (M.D. Tenn. Aug. 6, 2010). As Judge Woodcock in the United States District Court for the District of Maine explained:

> It would be futile to dismiss [defendants'] motion without prejudice, only to have [defendants] refile another motion to dismiss with effectively the same arguments. As the later amendment of the [c]omplaint does not affect the substance of the pending motion to dismiss, the [c]ourt considers the [a]mended [c]omplaint as the operative complaint for purposes of the motion.

*MMG Ins. Co.*, 263 F. Supp. 3d at 331.

Accordingly, the court will first address the pending motions for a temporary restraining order and preliminary injunction. The court will then address the defendants' respective motions to dismiss the first amended complaint as they pertain to the identical second amended complaint.[3]

    *1. Injunctive relief*

        *A. Likelihood of success on the merits*

The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I. Plaintiffs may bring two kinds of First Amendment claims challenging the constitutionality of a law: a "facial" and an "as-applied" challenge. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1033 (9th Cir. 2006). The Ninth Circuit has described facial challenges as follows:

> Facial constitutional challenges come in two varieties: First, a plaintiff seeking to vindicate his own constitutional rights may argue that an ordinance is unconstitutionally vague or . . . impermissibly restricts a protected activity. Second, an individual whose own speech or expressive conduct may validly be prohibited or sanctioned is permitted to challenge a statute on its face because it also threatens others not before the court.

*Id.* (citations and quotation marks omitted). A facial challenge "may be paired with the more common as-applied challenge, where a plaintiff argues that the law is unconstitutional as applied to his own speech or expressive conduct." *Id.* at 1034.

---

[3] The only difference between the first and second amended complaints is the identification of two LVMPD officers.

James C. Mahan
U.S. District Judge

Here, plaintiff brings both facial and as-applied challenges against CCC §§ 16.11.035, 16.11.070, and 16.11.090.  The court will address each in turn.[4]

### i.  Facial challenge

When addressing First Amendment challenges to a statute, "the appropriate level of scrutiny is initially tied to whether the statute distinguishes between prohibited and permitted speech on the basis of content."  *Frisby v. Schultz*, 487 U.S. 474, 481 (1988).

> A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.  Government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (citations omitted).

Statutes that address conduct may nonetheless curtail "expressive activity."  The court must determine whether the challenged regulation targets "purely expressive activity" or "conduct that merely contains an expressive component."  *Anderson v. City of Hermosa Beach*, 621 F.3d 1051, 1059 (9th Cir. 2010) (citing *United States v. O'Brien*, 391 U.S. 367, 376 (1968); *Cohen v. Cal.*, 403 U.S. 15, 18 (1971)).

Conduct with an expressive component includes "processes that do *not* produce pure expression but rather produce symbolic conduct that, 'on its face, does not necessarily convey a message.'"  *Id.* (quoting *Cohen*, 403 U.S. at 18).  If the regulation addresses conduct with an expressive component, "then it is entitled to constitutional protection only if it is 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'"  *Id.* (quoting *Spence v. Wash.*, 418 U.S. 405, 409 (1974)).

Conduct possesses sufficient communicative elements "to bring the First Amendment into play" when "an intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by

---

[4]  Plaintiff's motion "focuses on [his] central First Amendment claim."  (ECF No. 78 at 2 n.6).  Accordingly, the court limits its injunctive relief analysis to plaintiff's First Amendment claim.

those who viewed it." *Tex. v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Cohen*, 403 U.S. at 410–11) (alterations omitted). For instance, the Supreme Court has found that flag burning, *Johnson*, 491 U.S. at 404–07; placing a peace sign on the flag, *Spence v. Wash.*, 418 U.S. 405, 409-410 (1974); and wearing a black armband in protest of the Vietnam War, *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 505–06 (1969), are all instances of expressive conduct.

The Supreme Court "has held that when, as here, 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms.'" *Wayte v. United States,* 470 U.S. 598, 611 (1985) (quoting *O'Brien*, 391 U.S. at 376). If the conduct warrants First Amendment protection, the court applies the *O'Brien* four-part test, which is "a less stringent test than those established for regulations of pure speech," to determine the constitutionality of the statute. *Anderson*, 621 F.3d at 1059.

> [A] government regulation is sufficiently justified [1] if it is within the constitutional power of the [g]overnment; [2] if it furthers an important or substantial governmental interest; [3] if the governmental interest is unrelated to the suppression of free expression; and [4] if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest.

*O'Brien*, 391 U.S. at 377.

The Ninth Circuit's holding in *A.C.L.U. of Nevada v. City of Las Vegas* is instructive. *A.C.L.U. of Nevada v. City of Las Vegas*, 466 F.3d 784 (9th Cir. 2006) ("*A.C.L.U. II*"); *see also A.C.L.U. of Nevada v. City of Las Vegas*, 333 F.3d 1092 (9th Cir. 2003) ("*A.C.L.U. I*"), *cert. denied,* 540 U.S. 1110 (2004). In *A.C.L.U. I* and *A.C.L.U. II*, plaintiffs challenged § 11.68.100(H) of the Las Vegas Municipal Code ("LVMC"), which banned the unauthorized erection of structures in the Fremont Street Experience. *A.C.L.U. I*, 333 F.3d at 1108. After holding that the Fremont Street Experience was a traditional public forum, the Ninth Circuit noted "that tables often are used in association with core expressive activities, such as gathering signatures, distributing informational leaflets, proselytizing, or selling message-bearing merchandise." *Id.* at 1109.

The Ninth Circuit reversed the district court's determination and remanded the case for further consideration. *Id.* On remand, "[t]he [district] court granted summary judgment to [p]laintiffs on their as-applied claim, but declined to hold that the tabling statute is facially invalid." *A.C.L.U. II*, 466 F.3d at 790. The Ninth Circuit affirmed this reasoning, holding as follows:

> We decline to hold, however, that the tabling ordinance is facially unconstitutional. On its face, the ordinance does not regulate expressive activity. In *ACLU I*, we noted that tables often are used in association with core expressive activity, but suggested that [p]laintiffs' tabling claim would benefit from further exploration of the factual record on remand. Plaintiffs chose not to submit additional evidence. Although the record is sufficiently clear for us to hold that the tabling ordinance is unconstitutional as applied to [p]laintiffs' expressive activities, nothing in the record indicates that tables are used in the Fremont Street Experience for expressive purposes with enough frequency to support [p]laintiffs' facial challenge to the ordinance. Plaintiffs have not argued that the tabling ordinance is facially invalid when applied to nonexpressive conduct. We therefore affirm the district court's ruling that LVMC § 11.68.100(H) is facially constitutional.

*Id.* at 800 (internal citations and quotation marks omitted).

On one hand, the parties do not dispute that street performing is speech protected by the First Amendment or that the Las Vegas Strip is a public forum. (*See, e.g.*, ECF No. 21 at 15). On the other hand, the parties do not dispute that it is within the constitutional power of the government to regulate the storing and unloading of materials on public sidewalks. Nor do the parties dispute that pedestrian and traffic safety on the Las Vegas Strip is an important or substantial governmental interest. The court is left to determine whether the governmental interest is unrelated to the suppression of free expression and whether chapter 16's incidental restriction on First Amendment freedoms is narrowly tailored to achieve that interest.

The county has provided an unambiguous justification for chapter 16, § 16.11.010, which states in full:

> The board finds that due to vehicle congestion, long delays and increasing costs, it has become increasingly more attractive for residents and visitors to use the public sidewalks on Las Vegas Boulevard South (the Strip) rather than to drive or to ride. Since, traditionally, the major emphasis along the Strip has been on automobile transportation and not on pedestrians, the existing pedestrian environment is inadequate

as a transportation system and lacking in many safety features. Moreover, a great number of persons are engaged in uses of the public sidewalks which create undue obstruction, hindrance, blockage, hampering, and interference with pedestrian travel. Large numbers of pedestrians are walking in the streets when the public sidewalks become congested and many pedestrians are crossing against the traffic signal indications. In recognition of the need for improvement of the pedestrian environment and the need for accessible public sidewalks, it is necessary to enact [chapter 16].

Clark Cnty., Nev. Code of Ordinances § 16.11.010. The county implemented chapter 16 to "improve[] . . . the pedestrian environment" and provide "accessible public sidewalks." *Id.* Section 16.11.010 does not mention free speech or expressive activity. Chapter 16 does not expressly target free speech or expressive activity. Because the county justified its regulation of public sidewalks without reference to any speech, let alone the content thereof, the third prong of the *O'Brien* test is satisfied: the governmental interest at issue is unrelated to the suppression of free expression.

To the extent that chapter 16 impinges on speech, it inhibits only conduct with expressive components. To avoid curtailing expressive conduct, chapter 16 defines "obstructive use," in relevant part, as follows:

> Placing, erecting or maintaining an unpermitted table, chair, booth or other structure upon the public sidewalk, *if the placing, erecting, or maintaining of the table, chair, or booth is not protected by the First Amendment or if the placing, erecting, or maintaining of the table, chair, or booth is protected by the First Amendment but is actually obstructive*[.]

Clark Cnty., Nev. Code of Ordinances § 16.11.020 (emphasis added). Section 16.11.070 contains a similar First Amendment safety valve for "items . . . temporarily placed next to a street performer for that street performer's use unless said [items][5] actually obstruct[] the sidewalk in violation of this chapter[.]" Clark Cnty., Nev. Code of Ordinances § 16.11.070.

_____

[5] For the purposes of this analysis, the court interprets the language "items such as a musical instrument case or a backpack" as creating a nonexhaustive list. The phrase "such as" is "used to introduce an example or series of examples." *Such as*, Merriam-Webster Online dictionary, *available at* https://www.merriam-webster.com/dictionary/such%20as, *last visited* October 31, 2019. To interpret the list as exhaustive would render the phrase "such as" superfluous, which the court avoids if possible. *See Williams v. Taylor*, 529 U.S. 362, 404

The court finds that the fourth prong of the *O'Brien* test is met. Like the ordinance at issue in *A.C.L.U. I* and *II*, chapter 16 of the CCC facially targets conduct, not speech. The regulations at issue in chapter 16 of the CCC are narrowly tailored to achieve pedestrian and traffic safety by targeting congestion on public sidewalks. To address congestion problems, §§ 16.11.020 and 16.11.070 target prevent unpermitted tables, chairs, booths or other structures and equipment, materials, parcels, containers, packages, bundles or other property from being placed on public sidewalks, where they would exacerbate existing congestion issues. Thus, like the Ninth Circuit reasoned in *A.C.L.U. II*, plaintiff has not shown that the ordinance prohibiting tables or other objects on public sidewalks is facially invalid when applied to nonexpressive conduct.

Further, chapter 16 carves out several exceptions for expression protected by the First Amendment. These carve-outs alleviate First Amendment concerns despite the fact that the ordinance itself targets only conduct, not speech.

Accordingly, the county and LVMPD's motions to dismiss are granted as to plaintiff's facial challenges to CCC chapter 16. Claims 4 and 5 are dismissed with prejudice.

### ii. As-applied challenges

The delineation of facial challenges and as-applied challenges is tenuous at best.[6] "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

However, as a general rule, "[w]hen considering an as-applied challenge, a court considers the challenged statute in light of the charged conduct." *Martinez v. City of Rio Rancho*, 197 F. Supp. 3d 1294, 1309 (9th Cir. 2016) (citations and quotation marks omitted). As a result, the differentiation between a facial challenge and an as-applied challenge "is both instructive and necessary, for it goes to the breadth of the remedy employed by the Court, not

(2000) (holding that it is "a cardinal principle of statutory construction that [the court] must give effect, if possible, to every clause and word of a statute.").

[6] For a discussion of the inconsistency of the Supreme Court's folkwisdom that as-applied challenges are separate and distinct from—and preferable to—facial challenges, see Fallon, *Fact and Fiction About Facial Challenges*, 99 Calif. L. Rev. 915 (2011).

what must be pleaded in a complaint." *Citizens United*, 558 U.S. at 331 (citing *United States* v. *Treasury Employees*, 513 U.S. 454, 477–78 (1995)).

"The sidewalks along the Las Vegas Strip dedicated to public use are public fora." *Santopietro v. Howell*, 857 F.3d 980, 988 (9th Cir. 2017) (citing *Venetian Casino Resort, L.L.C. v. Local Joint Exec. Bd. of Las Vegas*, 257 F.3d 937, 943 (9th Cir. 2001)); (*see also* ECF No. 21 at 15). "[S]treet performing is expressive speech or expressive conduct protected under the First Amendment." *Santopietro*, 857 F.3d at 985 (quoting *Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) (en banc) (internal quotation marks omitted)); (*see also* ECF No. 21 at 15). Thus, taken together, street performers on the Las Vegas Strip are protected by the First Amendment.

LVMPD and its officers understand that First Amendment protections extend to street performers on the Las Vegas Strip. Not only did LVMPD acknowledge as much in its response to plaintiff's motion to dismiss (ECF No. 21 at 15), the Ninth Circuit noted—as plaintiff points out in this case—that LVMPD previously settled a First-Amendment claim stemming from enforcing the CCC against street performers on the Las Vegas Strip:

> To settle that suit, the parties, including Metro, agreed to an Interim Stipulated Memorandum of Understanding ("MOU") in 2010. The MOU (1) specified that the sidewalks and pedestrian bridges along the Strip constitute a traditional public forum; (2) defined "street performer" as "a member of the general public who engages in any performing art or the playing of any musical instrument, singing or vocalizing, with or without musical accompaniment, and whose performance is not an official part of a sponsored event"; and (3) recognized that this court held in *Berger v. City of Seattle*, 569 F.3d 1029 (9th Cir. 2009) (en banc), "that street performing is expressive speech or expressive conduct protected under the First Amendment." The MOU went on to provide that "[s]treet performing, including the acceptance of unsolicited tips and the non-coercive solicitation of tips, is not a *per se* violation of any of the codes or statutes being challenged in [the] action," which included Chapter 6 of the Clark County Code. The MOU also recited that "[t]he entirety of Chapter 6 of the Clark County Code, the business licensing codes, as written, is inapplicable to the act of street performing." At the same time, the MOU cautioned that "[s]treet performers who are legitimately in violation of a county code, state statute, or other law of general applicability are not immune from prosecution simply because they are street performers."

*Santopietro*, 857 F.3d at 985.

Here, the court finds that plaintiff has stated a colorable First Amendment as-applied challenge. Plaintiff is entitled to exercise his First Amendment right to free speech, which includes street performances on the Las Vegas Strip. However, due to his AMC, plaintiff requires the use of a small, portable table in order to do so.

The plain language of chapter 16 of the CCC is entirely consistent with plaintiff's First Amendment rights. Plaintiff engages in live drawing—which is expressive activity protected by the First Amendment—in a public forum. Further, § 16.11.020(i) defines a "street performer" as "a member of the general public who engages in any performing act or the playing of any musical instrument, singing or vocalizing, with or without musical accompaniment, and whose performance is not an official part of a sponsored event." Clark Cnty., Nev. Code of Ordinances § 16.11.020(i). Plaintiff's live drawing is a "performing act," and plaintiff is not an official part of a sponsored event. Plaintiff is therefore entitled to the First Amendment protections that chapter 16 of the CCC affords to street performers.

Section 16.11.020 makes the placement of a table on a public sidewalk an "obstructive use" only "if the placing, erecting, or maintaining of the table, chair, or booth is not protected by the First Amendment or if the placing, erecting, or maintaining of the table, chair, or booth is protected by the First Amendment but is actually obstructive." Clark Cnty., Nev. Code of Ordinances § 16.11.020(e)(1). Because plaintiff's live drawing is a performing act within the meaning of § 16.11.020, plaintiff is a street performed using his table in furtherance of his First Amendment activity. Therefore, plaintiff would have to be "actually obstructive" to violate CCC chapter 16.

As plaintiff notes, his wheelchair and table "take[] up less than four feet . . . of a 21.5-foot-wide sidewalk." (ECF No. 61 at 15). Plaintiff positions himself on a large stretch of sidewalk in front of the Bellagio fountains "with the back of his wheelchair to the guardrail so he does not impede the flow of traffic on the sidewalk while he is engaged in his performance." (ECF No. 79 at 5). In fact, "[plaintiff] often positions himself between gated trees which protrude into the sidewalk, and his table does not protrude further than said trees. This further undermines any claim that [plaintiff] has ever 'actually obstructed' the sidewalk in front of the

Bellagio." *Id.* at 5 n.10. Plaintiff has taken every measure available to him to avoid obstructing the sidewalk at issue. Nonetheless, plaintiff has been repeatedly cited for obstruction *per se* under chapter 16 of the CCC for his attempts to engage in live drawing, an expressive activity protected by the First Amendment.

The LVMPD defendants argue that plaintiff has adequate alternative channels to express himself. (ECF No. 21 at 17–18). The LVMPD defendants bolster this argument by positing that there are alternative channels for plaintiff to disseminate his message, "such as handing out his artwork to tourists and distributing flyers about artwork on the Las Vegas Strip." *Id.*

The LVMPD defendants ignore the fact that chapter 16 of the CCC, as the LVMPD defendants have enforced it against plaintiff, entirely precludes him from engaging in his chosen First Amendment speech: live drawing. Handing out his artwork is not the same as having the opportunity to live draw for passersby on the strip. Neither is handing out flyers about artwork. By enforcing CCC chapter 16 against plaintiff for using his small table, the LVMPD defendants have completely excluded plaintiff from a public forum, the Las Vegas Strip. In order to engage in his chosen First-Amendment-protected street performance, plaintiff must necessarily be allowed to use his small table.

Accordingly, the court finds there is a serious question that goes to the merits of the claim, which weighs in favor of injunctive relief. Further, in light of the serious question that goes to the merits of plaintiff's claim, the LVMPD defendants' motion to dismiss is denied as to claim 1.

> ### B. *Irreparable injury, balance of hardships and the public interest*

"Both [the Ninth Circuit] and the Supreme Court have repeatedly held that 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Klein v. City of San Clemente*, 584 F.3d 1196, 1207–08 (9th Cir. 2009) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)) (alteration omitted).

The Ninth Circuit has "consistently recognized the 'significant public interest' in upholding free speech principles." *Id.* at 1208 (citation omitted); *see also Am. Bev. Ass'n v. City & Cnty. of San Francisco*, 916 F.3d 749, 758 (9th Cir. 2019) ("Because [p]laintiffs have a

colorable First Amendment claim, they have demonstrated that they likely will suffer irreparable harm if the [o]rdinance takes effect."); *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) ("A colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." (internal quotation marks omitted)).

"The fact that plaintiffs have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in plaintiffs' favor." *Am. Bev. Ass'n*, 916 F.3d at 758 (quoting *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007)) (internal quotation marks and alterations omitted).

However, "[t]he public interest in maintaining a free exchange of ideas, though great, has in some cases been found to be overcome by a strong showing of other competing public interests, especially where the First Amendment activities of the public are only limited, rather than entirely eliminated." *Sammartano*, 303 F.3d at 974.

Here, due to plaintiff's circumstances, his First Amendment expression is entirely eliminated—rather than merely limited—by LVMPD's enforcement of chapter 16 against him. He has stated a colorable as-applied challenge to chapter 16 of the CCC. Thus, plaintiff has shown that he faces the loss of First Amendment freedoms, so the possibility of irreparable injury weighs in favor of a preliminary injunction. The balance of hardships and public interest cut in favor of injunctive relief in light of the fundamental freedom of speech at issue in this case.

Going beyond the legal landscape, the factual circumstances of the case further support injunctive relief. Plaintiff accepts tips from passersby, which helps plaintiff "afford life's necessities and support his wife." (ECF No. 78 at 3). Specifically, plaintiff uses his tips "to fund his wife's medical expenses for cancer treatment." *Id.* at 2 n.5. Despite plaintiff's intended use for his tips, at least one LVMPD officer "threatened to get the Internal Revenue Service to go after [plaintiff] and, like a modern-day highwayman, claimed he was entitled to seize the tips [plaintiff] receives from passersby who enjoy what he does and wish to support him and his wife." *Id.* at 2.

Finally, enjoining the county and LVMPD from enforcing chapter 16 against only defendant minimizes the hardship to the county and LVMPD. Both entities may otherwise continue enforcing chapter 16 to ensure the free flow of pedestrians on public sidewalks and traffic safety.

All the *Winter* factors weigh in favor of injunctive relief. Plaintiff's motion for temporary restraining order is granted.

### C. Plaintiff's bond

The court must condition a preliminary injunction on the plaintiff posting security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "The district court is afforded wide discretion in setting the amount of the bond, and the bond amount may be zero if there is no evidence the party will suffer damages from the injunction." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

A temporary restraining order preventing the county and LVMPD from enforcing chapter 16 against defendant in this case will not cause the defendants to suffer any monetary damages. In the absence of such injury, the court may grant a preliminary injunction without bond. No security is ordered.

### 2. Motions to dismiss as to the remaining claims

#### A. Claim 2: As-applied challenge under the ADA against the LVMPD defendants

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to state a claim under ADA, a plaintiff must show three things:

> (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability.

*Weinreich v. Los Angeles County Metro. Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).[7]

"[T]he ADA must be construed broadly in order to effectively implement the ADA's fundamental purpose of providing a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." *Barden v. City of Sacramento*, 292 F.3d 1073, 1077 (9th Cir. 2002). Accordingly, the Ninth Circuit "ha[s] construed 'the ADA's broad language as bringing within its scope anything a public entity does.'" *Id.* at 1076 (quoting *Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001)*).

This includes maintaining public sidewalks, which "is a normal function of a city and without a doubt something that the city does." *Barden*, 292 F.3d at 1076 (internal quotation marks, citation, and alteration omitted). Therefore, public entities must maintain the accessibility of public sidewalks for individuals with disabilities. *Id.* Law enforcement agencies are public entities within the purview of the ADA, making them subject to the statutory obligations discussed above. *Lee*, 250 F.3d at 691.[8] Further, "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 CFR § 35.130.

Plaintiff has AMC, which severely limits his mobility. The parties do not dispute the fact that plaintiff is a "qualified individual with a disability." Instead, LVMPD argues that it did not exclude plaintiff from accessing the sidewalks and, as a result, plaintiff has failed to state a claim. (ECF No. 21 at 20). LVMPD further argues that the "[u]se of a portable table is not a public entity service, program, or activity that is subject to Title II." *Id.* In response, plaintiff argues that "in addition to the right to be on the sidewalk, [disabled people] also have [the] same right as other street performers to engage in free expression when they aren't obstructing the sidewalk." (ECF No. 60 at 21).

---

[7] LVMPD erroneously provides the four-element standard for a claim under the Rehabilitation Act in its motion to dismiss. *See* (ECF No. 21 at 19).

[8] Because Sherriff Lombardo is not a public entity, he is properly dismissed as a defendant to this claim. *See* 42 U.S.C. § 12131. Plaintiff agrees. (ECF No. 60 at 2 n.4, 23 n.20).

While LVMPD correctly notes that "there is not a single allegation that LVMPD's denied [p]laintiff the use of his table because of his disability." (ECF No. 21 at 20). However, at the motion to dismiss stage, the court accepts the facts alleged by the plaintiff as true. Thus, the court considers the fact that (1) expressive activity on the Las Vegas Strip is protected by CCC chapter 16 unless it is actually obstructive; (2) plaintiff requires the use of a small table in order to engage in First Amendment expressive activity—his live drawing—on the Las Vegas Strip; and (3) LVMPD is obligated to make reasonable modifications to its policies to ensure that it does not discriminate against plaintiff on the basis of his disability.

Taking the facts as alleged in plaintiff's complaint as true, plaintiff was denied the benefit of live drawing on the Las Vegas Strip, as allowed by the First Amendment. Due to his AMC, plaintiff must use a small table in order to live draw. Because LVMPD failed to make a reasonable accommodation for plaintiff, he was not allowed to use his table. Plaintiff was arguably discriminated against because he was not allowed to use his table and, as a result, was excluded from live drawing on the Las Vegas Strip. The court finds that plaintiff has advanced a tenable argument that he was excluded, denied benefits, or discriminated against by reason of his disability.

Therefore, plaintiff has stated a colorable claim under the ADA. The LVMPD defendants' motion to dismiss is denied as to claim 2.

### B. Claim 3: As-applied challenge under the equal protection clause of the Fourteenth Amendment against the LVMPD defendants

In order to successfully challenge "selective enforcement" under the Fourteenth Amendment equal protection clause, plaintiffs must demonstrate "[1] that enforcement had a discriminatory effect and [2] the police were motivated by a discriminatory purpose." *Rosenbaum v. City & County of San Francisco*, 484 F.3d 1142, 1152 (9th Cir. 2007) (citation omitted). "In addition to the showing of discriminatory purpose and effect, plaintiffs seeking to enjoin alleged selective enforcement must demonstrate the police misconduct is part of a 'policy, plan, or a pervasive pattern.'" *Id.* at 1153 (citing *Thomas v. County of Los Angeles*, 978 F.2d 504, 509 (9th Cir. 1993)).

James C. Mahan
U.S. District Judge

Discriminatory effect is shown when a plaintiff demonstrates that other similarly-situated individuals not in the plaintiff's protected class were not prosecuted. *United States v. Armstrong*, 517 U.S. 456, 465 (1996). "To show discriminatory purpose, a plaintiff must establish that 'the decision-maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'" *Rosenbaum*, 484 F.3d at 1153 (quoting *Wayte v. United States*, 470 U.S. 598, 610 (1985)).

Here, plaintiff alleges facts sufficient to show that the LVMPD defendants enforced chapter 16 of the CCC against plaintiff "in spite of" its adverse effects on individuals with disabilities. Plaintiff contends that "[t]his unequal treatment is based on an impermissible classification—[plaintiff]'s physical disabilities which necessitate the use of a non-obstructing wheelchair and table during his artistic performances." (ECF No. 58 at 24). Indeed, plaintiff further alleges as follows:

> Because [plaintiff] requires the use of a table due to his physical disabilities, CCC § 16.11.070 as applied to him creates a situation wherein despite his right to engage in his chosen artistic expression, engaging in that expression subjects him to citations and harassment from law enforcement that a similarly-situated street performer with full use of his or her limbs would not experience.

*Id.*

However, plaintiff does not allege that there is a policy, plan, or a pervasive pattern of targeting street performers with disabilities or congenital diseases for their First Amendment activity. Instead, plaintiff alleges that LVMPD has instructed its officers to enforce the CCC against any street performers on the Las Vegas Strip. *See id.* at 6 n.12 (listing the representations the LVMPD defendants made to plaintiff while citing him), 12. These allegations are insufficient to prove that plaintiff was cited "because of" his disability.

To the contrary, the LVMPD defendants enforced CCC chapter 16 against defendant no differently than they would—and, according to plaintiff, did—against any other street performer. *See id.* at 9 (discussing other lawsuits regarding enforcement of CCC against street performers on the Las Vegas Strip), 12 ("In or around April 2017, Metro officers began harassing and citing street performers in the Las Vegas Resort District, including [plaintiff]."). Without allegations of

a policy, plan, or pattern of unequal enforcement, plaintiff's equal protection claim fails as a matter of law.

Accordingly, the LVMPD defendants' motion to dismiss is granted as to claim 3. Plaintiff's equal protection challenge is dismissed.

  **C. Claims 7, 9, and 12: § 1983 claims for violation of the First and Fourteenth Amendment right of free speech and expression against the LVMPD defendants; § 1983 claim for unreasonable seizure in violation of the Fourth and Fourteenth Amendments and conversion against Officers Young, Ferguson, Albright, and LVMPD**

Plaintiff brings several claims under 42 U.S.C. § 1983, which "provides a remedy to individuals whose constitutional rights have been violated by persons acting under color of state law." *Caballero v. Concord*, 956 F.2d 204, 206 (9th Cir. 1992). Thus, to prevail on a claim under § 1983, a plaintiff must show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; *Shah v. City of Los Angeles*, 797 F.2d 743, 746 (9th Cir. 1986).

As discussed in detail above, the First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. amend. I.

"A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cty., Ill.*, 506 U.S. 56, 61, 113 S. Ct. 538, 543, 121 L. Ed. 2d 450 (1992) (quoting *United States v. Jacobsen,* 466 U.S. 109, 113 (1984)).[9] "The seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity." *Payton v. New York*, 445 U.S. 573, 587 (1980).

---

  [9] The Nevada Supreme Court has "defined conversion as 'a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein *or in* derogation, exclusion, or defiance of such title or rights.'" *M.C. Multi-Family Dev., L.L.C. v. Crestdale Assocs., LTD.*, 193 P.3d 536, 542 (Nev. 2008) (quoting *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000)). The court's analysis supporting the Fourth and Fourteenth Amendment § 1983 claim applies to the conversion claim because the reasonableness of the seizure necessarily dictates whether the officers' "act of dominion" over plaintiff's table was "wrongful."

"Where the defense of qualified immunity is at issue, as here, [the court] appl[ies] a two-part inquiry to § 1983 claims." *Burke v. Cnty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009). "First, [the court] ask[s] whether the defendants' actions violated the Constitution. If there was a violation, [the court] ask[s] whether the right violated was clearly established." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

"[A]n officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted); *see also Butz* v. *Economou*, 438 U.S. 478, 507 (1978) ("[O]fficials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").

In *Grossman*, an individual officer arrested plaintiff pursuant to an unconstitutional ordinance. *Grossman,* 33 F.3d 1200. The Ninth Circuit held that the individual officer was entitled to qualified immunity, but the city remained liable. *Id.* The Ninth Circuit explained as follows:

> Where a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity. Similarly, an officer who unlawfully enforces an ordinance in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance, will not be entitled to immunity even if there is no clear case law declaring the ordinance or the officer's particular conduct unconstitutional.

*Id.* at 1209–10.

Here, as in *Grossman*, determining chapter 16's constitutionality as applied to plaintiff is dispositive of claims 7, 9, and 12. Officers Young, Ferguson, and Albright acted in reliance on chapter 16 of the CCC which, as this court noted, is a facially constitutional regulation aimed at addressing pedestrian congestion on public walkways. Plaintiff displayed his table on the sidewalk, which necessarily means that it was in plain view and in a public place. In furtherance

of chapter 16's policy of preventing obstructive uses of sidewalks, Officers Young, Ferguson, and Albright cited plaintiff for his expressive conduct and seized his table.

However, § 16.11.020 of the CCC specifically exempts tables used in furtherance of First Amendment activity from the definition of an "obstructive use" unless the table is "actually obstructing" the sidewalk. Plaintiff has alleged that, because of his positioning on the sidewalk, he did not actually obstruct the walkway. Further, plaintiff has clearly demonstrated that his table was essential to his live drawing. For that reason, the court, as discussed above, finds that plaintiff has stated a colorable as-applied constitutional challenge to chapter 16 of the CCC.

Consequently, Officers Young, Ferguson, and Albright either relied on an unconstitutional interpretation of chapter 16 or unconstitutionally applied chapter 16 to plaintiff's expression. Thus, these erroneous applications of chapter 16 stymied plaintiff's First Amendment rights. Further, plaintiff's First-Amendment-protected expression cannot support probable cause. *See, e.g., Grossman,* 33 F.3d 1200.

But the individual officers were relying on the policy and interpretation promulgated by LVMPD. (*See* ECF No. 58 at 9 (discussing other lawsuits regarding enforcement of CCC against street performers on the Las Vegas Strip)). One way a plaintiff may demonstrate municipal liability for a constitutional violation is by showing that the violation occurred as a result of inadequate training on the part of the municipality. *See City of Canton v. Harris,* 489 U.S. 378, 389 (1989).

Therefore, plaintiff has sufficiently pleaded a *Monell* claim against LVMPD for promulgating the policy of citing street performers for obstruction *per se* when they use a table or other object for First Amendment expression. On the other hand, the individual officers are entitled to qualified immunity for their good faith reliance on the duly-enacted statute as interpreted by LVMPD.

Accordingly, the LVMPD defendants' motion to dismiss is granted in part and denied in part as to claims 7, 9, and 12. The individual officers are dismissed as defendants. LVMPD itself is not.

### D. Claim 8: § 1983 claim for chilling free speech in violation of the First and Fourteenth Amendments against the LVMPD defendants

"In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that by his actions the defendant deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in the defendant's conduct." *Mendocino Envtl. Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999) (citations, quotation marks, and alterations omitted). Thus, "plaintiffs must present 'nonconclusory allegations of subjective motivation, supported either by direct *or* circumstantial evidence, before discovery may be had.'" *Magana v. Northern Mariana Islands*, 107 F.3d 1436, 1447 (9th Cir. 1997) (quoting *Lindsey v. Shalmy*, 29 F.3d 1382, 1385 (9th Cir. 1994); *Branch v. Tunnell*, 937 F.2d 1382, 1387 (9th Cir. 1991)). Even "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

Plaintiff does not allege that the LVMPD defendants acted with the intent to chill his speech. (*See* ECF No. 58). Instead, plaintiff avers at length how they have continued to enforce chapter 16 of the CCC—which the court has noted targets the flow of pedestrians and traffic safety—against street performers. *Id.* Malintent cannot be imputed to the LVMPD defendants simply because plaintiff alleges that they infringed on his First Amendment rights by enforcing an otherwise operative and legitimate county ordinance.

As a result, plaintiff's eighth claim is dismissed without prejudice.

### E. Claim 10: Violation of the Nevada Constitution's free speech protections against all defendants

Plaintiff contends that "the rights afforded by the Nevada Constitution are coextensive with those afforded by the U.S. Constitution." (ECF No. 61 at 15 (citing *Univ. and Cmty. Coll. Sys. of Nev. v. Nevadans for Sound Gov't*, 100 P.3d 179, 187 (Nev. 2004))). As the Nevada Supreme Court explained:

> The First Amendment to the United States Constitution, as applied to state governments through the Fourteenth Amendment, prohibits a state from "abridging the freedom of speech." Similarly, Article 1, Section 9 of the Nevada Constitution protects the general right of the people to engage in expressive activities in this state. We have held that Article 1, Section 9 affords no greater protection to

James C. Mahan
U.S. District Judge

- 24 -

speech activity than does the First Amendment to the United States Constitution. Further, while Article 19 of the Nevada Constitution expressly recognizes the right to engage in a specific type of expressive activity, including the right to circulate referendums and petitions, that provision likewise grants no broader protection than the First Amendment and Article 1, Section 9 of the Nevada Constitution grant to any covered expressive activity. Therefore, under the Nevada Constitution, the appropriate analysis of appellants' restrictions is identical to that under the First Amendment.

*Nevadans for Sound Gov't*, 100 P.3d at 187.

The county argues that "[p]laintiff has alleged no conduct by Clark County whatsoever in his [c]omplaint. The conduct underlying [p]laintiff's [c]omplaint consists of the conduct of LVMPD and its agents, parties for whom Clark County is not subject to liability." (ECF No. 74 at 18). Indeed, the plaintiff contends that his "rights to speech and expressive conduct are impermissibly restricted, chilled, deterred and inhibited by the actions of [d]efendants" and that "[d]efendants' actions, as alleged herein, constitute violations of [plaintiff's] rights under the Constitution of the State of Nevada, Art. 1, § 9." (ECF No. 58 at 34–35).

Plaintiff's complaint is predicated on actions by LVMPD and its officers. *Id.* at 12–20. Plaintiff alleges that LVMPD officers cited him, harassed him, and interrupted his live drawing. *Id.* Plaintiff further alleges that several LVMPD officers indicated that they cited him pursuant to a policy or command from LVMPD itself. *Id.* at 6 n.12. However, plaintiff does not allege any particular conduct by the county or its officials. The county cannot be held liable for the conduct of LVMPD and its officers. Nev. Rev. Stat. § 280.280; *see, e.g., Scott v. Las Vegas Metro. Police,* 2:10-CV-01900-ECR-PAL, 2011 WL 2295178, at *5 (D. Nev. June 8, 2011); *Denson v. Clark County*, 2:10-CV-00525-RCJ-LRL, 2010 WL 3076260 (D. Nev. Aug. 4, 2010). Thus, the county's motion to dismiss is granted as to claim 10.

However, consistent with the discussion of plaintiff's as-applied challenge under the federal constitution, plaintiff has stated a colorable claim against the LVMPD defendants. The LVMPD defendants' motion to dismiss is denied as to claim 10.

. . .

. . .

*F. Claim 11: Negligent training, supervision, and retention against LVMPD*

Here, plaintiff's negligent training, supervision, and retention claim is based in state law. "It is well established that a state court's interpretation of its statutes is binding on the federal courts unless a state law is inconsistent with the federal Constitution." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1012 (9th Cir. 2004) (citing *Adderley v. Florida*, 385 U.S. 39, 46 (1966)); *see also* 28 U.S.C. § 1652.

Nevada has waived its general state immunity under Nevada Revised Statutes ("NRS") § 41.031. The state's waiver of immunity is not absolute; the state has retained a "discretionary function" form of immunity for officials exercising policy-related or discretionary acts. *See* Nev. Rev. Stat. § 41.032.[10] Nevada adopted the Supreme Court's *Berkovitz-Gaubert* two-part test regarding discretionary immunity, meaning "Nevada's discretionary-function immunity statute mirrors the Federal Tort Claims Act." *Martinez v. Maruszczak*, 168 P.3d 720, 727 (Nev. 2007).

Thus, public entities are immune from suit for discretionary functions, but can be held liable for operational functions. *See id.* at 727 ("[D]ecisions made in the course of operating the project or endeavor were deemed non-discretionary and, thus, not immune under the discretionary-function exception, as those decisions [are] viewed as merely operational."); *see also Andolino v. State*, 624 P.2d 7, 9 (Nev. 1981) ("[The state of Nevada] may be sued for operational acts, but maintains immunity for policy or discretionary ones").

Thus, state actors are entitled to discretionary-function immunity under NRS § 41.032 if their decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Martinez*, 168 P.3d at 729. "To come within the discretionary function exception, the challenged decision need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." *Vickers v. United States*, 228 F.3d 944, 950–51 (9th Cir. 2000). However, "federal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress'

---

[10] Title 12 of NRS states in relevant part that no action may be brought against a state officer or official which is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2).

purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *See Martinez,* 168 P.3d at 729 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted).

The government agency "has the burden of proving that the discretionary function exception applies." *Sigman v. United States*, 217 F.3d 785, 793 (9th Cir. 2000). "In a close case, [the court] must favor a waiver of immunity and accommodate the legislative scheme." *Hagblom v. State Director of Motor Vehicles*, 571 P.2d 1172, 1174–75 (Nev. 1977) (quoting *State v. Silva*, 478 P.2d 591, 593 (Nev. 1970)); *see also Martinez,* 168 P.3d at 724 ("Because the primary legislative intent behind the qualified waiver of sovereign immunity from tort liability under NRS Chapter 41 was to waive immunity, we strictly construe limitations upon that waiver." (quotation marks and footnote citation omitted)).

The LVMPD defendants assert that the training of LVMPD officers is a discretionary act such that they are entitled to immunity by statute. (ECF No. 21 at 26–27). In particular, LVMPD asserts that the hiring, training, supervision, and retention of its officers "invoke policy judgments of the type Congress intended the discretionary function exception to shield." (ECF No. 21 at 27 (quoting *Vickers*, 228 F.3d at 950). Consequently, LVMPD posits that decisions relating to hiring, training, and supervision of employees are always entitled to immunity. The court disagrees.

Negligent training, supervision, and retention claims are not always barred by discretionary immunity because "certain acts, although discretionary, do not fall within the discretionary-function exception's ambit because they involve 'negligence unrelated to any plausible policy objectives.'" *Martinez*, 168 P.3d at 728. Indeed, the court has found that in some cases "the training and supervision of officers is not a 'discretionary function,' but rather an 'operational function' for which Metro does not enjoy immunity under the statute." *Herrera v. Las Vegas Metro. Police Dep't*, 298 F. Supp. 2d 1043, 1055 (D. Nev. 2004); *see also Perrin v. Gentner*, 177 F. Supp. 2d 1115, 1126 (D. Nev. 2001) ("Metro's training and supervision of

Officer Gentner constituted an 'operational function' for which Metro does not enjoy immunity under NRS 41.032.").

LVMPD has not born is burden to show that its training decisions in this case are discretionary functions subject to policy judgments. The decisions not to inform LVMPD officers of the MOU, to instruct them to enforce chapter 16 of the CCC despite the statutory carve-outs for First Amendment activity, and to repeatedly cite plaintiff for using his small table arguably constitute "negligence unrelated to any plausible policy objectives." LVMPD does not present an argument to the contrary. Because this is a close case, the court favors a waiver of immunity.

Accordingly, the LVMPD defendants' motion to dismiss plaintiff's negligent training, supervision, and retention claim is denied.

**IV.    Conclusion**

The county's motion is granted as to claims 1, 2, 3, 6, and 10.

The court grants the LVMPD defendants' motion as to all claims against the LVMPD officers in their official capacities.

The court grants the LVMPD defendants' motion as to Sheriff Lombardo as a defendant in claim 2.

The court denies the LVMPD defendants' motion to dismiss as to claims 1, 2, 10, and 11.

The court grants the LVMPD defendants' motion to dismiss as to claims 3 and 8. Plaintiff's equal protection and § 1983 chilling claims are dismissed without prejudice.

The LVMPD defendants' motion to dismiss is granted in part and denied in part as to claims 7, 9, and 12. The individual officers are dismissed as defendants as to those claims. LVMPD itself is not.

The court grants both motions to dismiss as to plaintiff's facial challenges to chapter 16 of the Clark County Code. Claims 4 and 5 are dismissed with prejudice.

. . .

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

- 28 -

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the county's motion to dismiss (ECF No. 15) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that the LVMPD defendants' motion to dismiss plaintiff's amended complaint (ECF No. 21) be, and the same hereby is, GRANTED in part and DENIED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that the LVMPD defendants' motion to exceed the page limit on its motion to dismiss (ECF No. 16) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff's motion for temporary restraining order (ECF No. 78) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that all defendants, their agents, officials, and employees are RESTRAINED from enforcing chapter 16 of the CCC against plaintiff's First Amendment activity on the Las Vegas Strip.

IT IS FURTHER ORDERED that defendants shall appear on November 20, 2019, at 1:30 p.m. in Courtroom No. 6A and SHOW CAUSE why a preliminary injunction should not be granted that restrains and enjoins defendants from enforcing chapter 16 of the CCC against plaintiff's First Amendment activity on the Las Vegas Strip.

IT IS FURTHER ORDERED that defendants shall file their oppositions, if any, to plaintiff's motion for preliminary injunction by 5:00 p.m. on November 13, 2019.

IT IS FURTHER ORDERED that plaintiff shall file his reply, if any, by 5:00 p.m. on November 18, 2019.

DATED November 7, 2019, at 2:15 p.m.

_____
UNITED STATES DISTRICT JUDGE