UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

LARIME TAYLOR,

        Plaintiff(s),

   v.

LAS VEGAS METROPOLITAN POLICE DEPARTMENT, et al.,

        Defendant(s).

Case No. 2:19-CV-995 JCM (NJK)

ORDER

      Presently before the court is defendant Clark County ("the county") motion for certification and entry of final judgment. (ECF No. 89). Plaintiff Larime Taylor ("plaintiff") filed a response (ECF No. 90), to which the county replied (ECF No. 91).

      Also before the court is plaintiff's motion for partial reconsideration. (ECF No. 93). Defendants Thomas Albright, Jacob Bittner, Darrell Lee Davies, Weston Ferguson, Jake Freeman, Janette Gutierrez, Matthew Kravetz, Las Vegas Metropolitan Police Department, Joseph Lombardo, Christopher Longi, Morgan McClary, Clint Owensby, Gerardo Reyes, Robert Thorne, Theron Young (collectively, "the officer defendants") filed a response (ECF No. 95), to which plaintiff replied (ECF No. 98).

## I.    Background

      The instant action arises from the numerous interactions plaintiff has had with Las Vegas Metropolitan Police Department ("LVMPD") officers while plaintiff was "live drawing" on the Las Vegas Strip. (ECF No. 58). Plaintiff has arthrogryposis multiplex cogenita ("AMC"), a congenital disease that affects the development and mobility of the joints in his arms and legs, requiring him to use a wheelchair. *Id.* at 7. For the past seven years, plaintiff has been live

drawing on a large sidewalk in front of the Bellagio fountains on Las Vegas Boulevard.  *Id.*  In order to live draw, plaintiff backs his wheelchair against the guardrail that abuts Las Vegas Boulevard and uses his mouth to draw on a small portable table with a limited number of art supplies.  *Id.* Although he does not sell his drawings, plaintiff accepts tips from passersby.  *Id.*

Plaintiff live drew on the Las Vegas Strip without issue from 2012, until April 2017.  *Id.* at 11.  Beginning in April 2017, however, LVMPD officers allegedly "began harassing and citing street performers in the Las Vegas Resort District, including [plaintiff]."  *Id.* at 12.

Because of his small portable table, LVMPD officers have cited plaintiff for obstructive use of the sidewalk—a violation of Clark County Code ("CCC") §§ 16.11.070 and 16.11.090—ten times in the last two years.  (ECF No. 58 at 12–18).  LVMPD officers cited plaintiff on June 11, June 29, July 26, and September 7, 2017; February 16, May 3, and July 28, 2018; and July 12, 14, and 26, 2019.  *Id.*  In addition to citing plaintiff, LVMPD officers seized plaintiff's table on June 11 and September 7, 2017.[1]  *Id.* at 12, 15.  Plaintiff further alleges that LVMPD officers interrupted his performance on June 16 and 19 and October 21, 2019.  *Id.* at 19–20[2]; (*see also* ECF No. 78 at 5).

Just prior to being issued a citation on July 12, 2019, plaintiff discussed his history of citations and his successful appeal with Officer Bittner.  *Id.* at 17.  "Officer Bittner explained that [LVMPD] was enforcing the [c]ode's obstruction provisions against artists and performers as a department-wide policy, and that he was obligated to issue a citation until a court ordered his superiors to change the policy."  *Id.*  On July 14, 2019, Officer Freeman told plaintiff that "until an injunction was issued[,] he was obligated to follow [LVMPD]'s policy of ticketing street performers."  *Id.* at 18.

After his storied history of chapter-16-related citations, plaintiff filed the instant action against LVMPD, its officers, Sherriff Lombardo, and the county for violating his First, Fourth, Fifth, and Fourteenth Amendment rights; violating the Americans with Disabilities Act

---

[1] Notably, LVMPD officers seized a different table on each occasion because the table was never returned to plaintiff after the June 11, 2017, seizure.  (ECF No. 58 at 37).

[2] The various LVMPD officers named as defendants are those who interrupted plaintiff's live drawing, whether or not plaintiff received a citation as a result.

("ADA"); violating the Nevada Constitution; negligent training, supervision, and retention; and conversion.

The county, the officer defendants, and LVMPD moved to dismiss plaintiff's complaint. (ECF Nos. 15; 21). The court granted the county's motion and dismissed it as a defendant. (ECF Nos. 84; 86). The court granted the officer defendants and LVMPD's motion to dismiss in part and denied it in part. (ECF No. 84). The county now requests entry of a final judgment. (ECF No. 89). Plaintiff now asks the court to reconsider its prior order, arguing that the court's qualified immunity determination is clear error. (ECF No. 93).

## II.    Legal Standard

Rule 59(e) "permits a district court to reconsider and amend a previous order[;]" however, "the rule offers an extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (internal quotations omitted). A motion for reconsideration "should not be granted, absent highly unusual circumstances." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).

On one hand, a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters., Inc.*, 229 F.3d at 890. On the other hand, "[a] movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts. A movant who repeats arguments will be subject to appropriate sanctions." LR 59-1(b).

Thus, the Ninth Circuit has provided that "[r]econsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993); Fed. R. Civ. P. 60(b). "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

## III.    Discussion

*A. Certification and entry of final judgment*

In *Curtiss-Wright Corp. v. General Elec. Co.*, the Supreme Court explained two-prong analysis for district courts to determine the propriety of certifying and entering a final judgment for a case resolved in its entirety. *See Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980). "A district court must first determine that it is dealing with a 'final judgment,'" meaning that the judgment "is 'an ultimate disposition of an individual claim entered in the course of a multiple claims action.'" *Id.* (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427 (1956)). Second, "the district court must go on to determine whether there is any just reason for delay." *Id.* at 8.

The Supreme Court was careful to advise district courts that "[n]ot all final judgments on individual claims should be immediately appealable, even if they are in some sense separable from the remaining unresolved claims." *Id.* Instead, the district court must use its judicial discretion "to determine the appropriate time when each final decision in a multiple claims action is ready for appeal." *Id.* This determination requires the court to consider "judicial administrative interests as well as the equities involved." *Id.*

Here, the parties agree that the court's prior order is a "final judgment" for the purpose of certification. Thus, the only question before the court is whether administrative and equitable interests support certification and entry of a final judgment.

The court finds that judicial administrative interests are best served by denying the county's motion. The county contends that the as-applied and facial challenges to CCC chapter 16 "are distinct and functionally unrelated." (ECF No. 89 at 6). The court disagrees. As the court noted in its order, "[t]he delineation of facial challenges and as-applied challenges is tenuous at best." (ECF No. 84 at 12). Indeed, plaintiff argued that "the [c]ounty strangely joins in [LVMPD's] bizarre effort to get this [c]ourt to read the [c]ode's restrictions on speech so broadly that the [c]ode must now be invalidated." (ECF No. 61 at 7).

The court finds that issues of CCC chapter 16's constitutionality—whether facial or as-applied—are best addressed in a single appeal, rather than requiring the Ninth Circuit to visit and

then revisit the proper interpretation of the CCC. Accordingly, the court denies the county's

motion.

### B. Reconsideration

#### 1. Qualified immunity

The Supreme Court has explained that "[q]ualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985)). Consequently, the Court "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Id.* at 232 (quoting *Hunter v. Bryant,* 502 U.S. 224, 227 (1991) (*per curiam*)) (quotation marks omitted).

"Where the defense of qualified immunity is at issue, as here, [the court] appl[ies] a two-part inquiry to § 1983 claims." *Burke v. Cnty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009). "First, [the court] ask[s] whether the defendants' actions violated the Constitution. If there was a violation, [the court] ask[s] whether the right violated was clearly established." *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)).

"[A]n officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation marks and citation omitted); *see also Butz* v. *Economou*, 438 U.S. 478, 507 (1978) ("[O]fficials will not be liable for mere mistakes in judgment, whether the mistake is one of fact or one of law.").

Plaintiff contends that this court could not conclude that the officer defendants were entitled to qualified immunity because of their good faith reliance on the duly-enacted statute as interpreted by LVMPD. (ECF No. 93 at 5 (citing ECF No. 84 at 23)). Plaintiff suggests that resolving the issue of qualified immunity in favor of the officer defendants would be more appropriate at summary judgment, rather than in a motion to dismiss.

Plaintiff argues that the court is limited to the allegations within his complaint and that "[n]owhere in [his] complaint did he allege that the [o]fficer [d]efendants relied in good faith upon the duly-enacted statute as interpreted by [LVMPD]." *Id.* Plaintiff further argues that "there is simply no factual basis for determining that the [o]fficer [d]efendants acting in good faith reliance on [LVMPD's] interpretation of the statute." *Id.*

Here, qualified immunity issue was properly resolved at the motion to dismiss stage in light of the Supreme Court's guidance in *Pearson*. Further, the court had sufficient facts—even if it was limited to the face of the complaint—to resolve the question of qualified immunity in the officer defendants' favor.

The court's prior order relied on allegations in plaintiff's second amended complaint. (ECF No. 58). Plaintiff alleged that "Officer Bittner explained that Metro was enforcing the Code's obstruction provisions against artists and performers as a department-wide policy, and that he was obligated to issue a citation until a court ordered his superiors to change the policy." *Id.* at 17. The court found that this department-wide policy supported a *Monell* claim against LVMPD, but it also showed that the officer defendants relied on the LVMPD's policy when applying CCC chapter 16. (ECF No. 84 at 23).

Finally, plaintiff claims that the court erred by dismissing the officer defendants based on qualified immunity because plaintiff is seeking declaratory and injunctive relief. (ECF No. 93 at 5). But plaintiff "concedes that with respect to the [n]inth and [t]welfth causes of action—both of which pertain to the unlawful conversion of Mr. Taylor's tables—he did not specifically request injunctive relief." (ECF No. 98 at 7). Thus, the court did not err by dismissing the officer defendants from the ninth and twelfth causes of action.

Plaintiff did not specifically request injunctive relief in his seventh cause of action under § 1983, which alleges violations of the First and Fourteenth Amendments. (ECF No. 58 at 28–31). However, he did request a "permanent injunction preventing [LVMPD] *and its officers* from violating the constitutional rights of individuals by improperly citing street performers for obstructive use of public sidewalk[s]." *Id.* at 38 (emphasis added).

As the Supreme Court has explained, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471 (1985)). Ninth Circuit authority provides that "[a]n official-capacity suit for injunctive relief is properly brought against any persons who 'would be responsible for implementing any injunctive relief.'" *Edmo v. Corizon, Inc.*, 935 F.3d 757, 799 (9th Cir. 2019) (quoting *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)).

The officer defendants—as discussed above—enforced CCC chapter 16 in accordance with LVMPD's interpretation thereof. LVMPD is responsible for implementing any injunctive relief as it pertains to the interpretation and enforcement of CCC chapter 16. Accordingly, LVMPD is the proper defendant for plaintiff's request for injunctive and declaratory relief.

Thus, the court did not clearly err in dismissing the officer defendants. Plaintiff's motion is denied as to the court's qualified immunity determination.

### 2. *State-law conversion claim*

Plaintiff argues that the officer defendants are not entitled to qualified immunity on his conversion claim because the "conversion claim does not implicate any statutory or constitutional right; instead it is a state tort claim." (ECF No. 93 at 5). The officer defendants submit that—regardless of the qualified immunity analysis—dismissal of the conversion claim was proper pursuant to Nevada's discretionary function immunity statute. (ECF No. 95 at 7 (citing Nev. Rev. Stat. § 41.032)).

Nevada has waived its general state immunity under Nevada Revised Statutes ("NRS") § 41.031. The state's waiver of immunity is not absolute; the state has retained a "discretionary function" form of immunity for officials exercising policy-related or discretionary acts. *See* Nev. Rev. Stat. § 41.032. Nevada's discretionary-function immunity statute provides that "no action may be brought" against a public officer "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2).

Nevada adopted the Supreme Court's *Berkovitz-Gaubert* two-part test regarding discretionary immunity, meaning "Nevada's discretionary-function immunity statute mirrors the Federal Tort Claims Act." *Martinez v. Maruszczak*, 168 P.3d 720, 727 (Nev. 2007). Consequently, state actors are entitled to discretionary-function immunity under NRS § 41.032 if their decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Id.* at 729.

"To come within the discretionary function exception, the challenged decision need not actually be grounded in policy considerations so long as it is, by its nature, susceptible to a policy analysis." *Vickers v. United States*, 228 F.3d 944, 950–51 (9th Cir. 2000). However, "federal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *See Martinez,* 168 P.3d at 729 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted).

Plaintiff does not contest that the officer defendants' decision to seize his table involved an element of individual choice. Nor does he argue that it was not based on considerations of social, economic, or political policy. Instead, plaintiff argues only that discretionary function does not apply because the "seizures of [his] tables were made in bad faith and discretionary immunity cannot protect them from liability for conversion." (ECF No. 98 at 9).

"Bad faith, the converse of good faith, has been defined as 'the absence of a reasonable basis for [acting] . . . and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for [acting].'" *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991). But, as discussed above, LVMPD had already promulgated a department-wide policy of enforcing the code's obstruction provisions against artists and performers. Thus, the officers' reliance on that policy was a reasonable basis for issuing a citation. The decision to seize plaintiff's table required the officers to make a decision—precisely the sort of administrative decision that discretionary function immunity is designed to prevent the court from second-guessing.

James C. Mahan
U.S. District Judge

Accordingly, under discretionary function immunity, dismissal of plaintiff's conversion claim is appropriate. Plaintiff's motion to reconsider is denied.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the county's motion for certification and entry of final judgment (ECF No. 89) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that plaintiff's motion for partial reconsideration (ECF No. 93) be, and the same hereby is, DENIED.

DATED February 10, 2020.

_____
UNITED STATES DISTRICT JUDGE